IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ROGATIEN HOUNTON,

    Plaintiff,

v.                                                          Civ. No. 02-1427 RLP/LAM

THE GALLUP INDEPENDENT,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the court on Defendant's Motion for Summary Judgment. Plaintiff alleges he was subjected to a hostile work environment based on race and national origin and brings his federal claims pursuant to Title VII of the Civil Rights Act of 1964, § 701 *et seq.*, as amended, 42 U.S.C. §§ 2000e *et seq.* and 42 U.S.C. § 1981. He also asserts a state tort law claim of intentional infliction of emotional distress. He requests compensatory and punitive damages for his claims.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the moving party shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue of fact is "genuine" if there is sufficient evidence to that a rational trier of fact could find for the nonmoving party. *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 528 U.S. 815 (1999). "An issue of fact is 'material' if, under the substantive law, it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). The court examines the factual record and all reasonable

inferences therefrom in the light most favorable to the party opposing summary judgment. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996).

## FACTUAL BACKGROUND

Plaintiff is from Africa and his native language is French. He married a United States' citizen and, at the time of the incidents complained of, lived in Gallup, New Mexico. He was employed by Defendant newspaper *The Gallup Independent* ("Defendant" or "the newspaper") from October, 1999 until his termination on January 13, 2001. Plaintiff's job at the newspaper was as a printer, a position that requires heavy lifting. Some of Plaintiff's co-workers were Navajo, who were teaching Plaintiff their language and he instructed them in French. They got along reasonably well until Plaintiff suffered a herniated disc and received a physician's note that he could not do any heaving lifting for an indeterminate period. *See* Defendant's Exhibit J, Physician's note dated November 30, 2000; Defendant's Exhibit P, Police Report (stating that co-workers began harassing Plaintiff "because he couldn't lift" and "calling him names since he got hurt").

According to the co-workers, Plaintiff used his physician's note to avoid doing any of the hard work, which was especially galling because he also had a job at Wal-Mart working nights and weekends changing oil and tires on automobiles. *See* Defendant's Exhibits B and V , Deposition of Rogatien Hounton. Plaintiff's co-workers began calling him "lazy." Events escalated on January 12, 2001 when, according to Plaintiff, his co-workers came to work intoxicated and harassed him by shoving him and putting a trash can over his head. One co-worker attempted to clock him out before the shift ended. Exhibit L. The next day Plaintiff and his co-workers were again having difficulties, the facts

2

of which are disputed. In any event, it is undisputed that Plaintiff left the premises, went to the Gallup Police Station and returned to work with an officer in tow. The newspaper's vice-president, Bob Zollinger, fired Plaintiff on the spot and would not let the officer question employees about what had occurred. This lawsuit followed.

## DISCUSSION

A.  <u>Hostile work environment</u>.

"Hostile environment harassment occurs where a supervisor or co-worker's conduct unreasonably interferes with an individual's work performance or creates an intimidating, hostile, or offensive work environment." *Wright-Simmons v. City of Oklahoma City*, 155 F.3d 1264, 1269 (10th Cir. 1998). "To survive summary judgment, Plaintiff must show that 'under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was racial or stemmed from racial animus.'" *Trujillo v. University of Colorado Health Sciences Center*, 157 F.3d 1211, 1214 (10th Cir. 1998) (quoting *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994)). "While we judge that atmosphere both objectively and subjectively, . . . we must look at all the circumstances from the perspective of a reasonable person in the plaintiff's position." *McCowan v. All Star Maintenance, Inc.*, 273 F.3d 917, 923 (10th Cir. 2001) (citations and internal quotation marks omitted). "[A] few isolated incidents of racial enmity are insufficient to survive summary judgment." *Trujillo*, 157 F.3d at 1214. "'In the typical case, the question is whether the quantity, frequency, and severity of the racial, ethnic, or sexist slurs create a work environment so hostile as to discriminate against the minority employee.'" *Id.* (citation omitted).

3

Plaintiff argues that he was subjected to a hostile work environment based on race and national origin. It has been noted by the Tenth Circuit Court of Appeals that § 1981 racial discrimination claims and Title VII national origin claims overlap to a significant degree. *See Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1387 n.7 (10th Cir. 1991). So, too, in this case.

The incidents of harassment cited by Plaintiff occurred over his 18-month employment at the newspaper, and included being called "jungle bunny," being told he was black because he did not shower (and other comments on his personal hygiene), and having "Coming to America" sung or chanted to him on more than one occasion. He also states he was called a "lazy ass," "bete" (French for homosexual), and a "baby." Plaintiff asserts that all of these remarks were motivated by racial or national origin animus. Plaintiff also recalls a time some co-workers placed a trash can over his head, tried to get him to leave work by punching out his time card, and an alleged battery, which culminated in his termination.

With regard to the verbal harangues, the "jungle bunny" comment is clearly racist and offensive. Nevertheless, the evidence submitted indicates this comment occurred when the Plaintiff and his co-workers were calling each other names until told to cease by a supervisor. Plaintiff's Exhibit 4, Deposition of Mark Edward Vincent. The remainder of the comments, when viewed in context, are not so virulent to objectively offend the sensibilities of a reasonable person. The language and teasing in the press room was undoubtedly loud and vulgar. Co-workers called each other names and "Fuck you" was not an unknown utterance. Plaintiff's Exhibit 3, Deposition of John Sherman. The

arguably racist remark that Plaintiff was black because he did not shower is not so loaded with racial animus that it violates Title VII. The time card incident and the trash can incident, when viewed in context with the deposition testimony, seems to be of the character of the horseplay that went on in the press room. In their totality and taken in context, the comments and conduct of his co-workers cannot support Plaintiff's hostile environment claim. *Compare Walls v. Turano Baking Company*, 221 F. Supp.2d 924 (N.D. Ill. 2002).

As stated by the United States Supreme Court, "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" are excluded from actionable conduct because "simple teasing, . . .offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citations and internal quotation marks omitted). In this case, Plaintiff's allegations fall short of the requirement that the conduct at issue be so "pervasive" or "severe" that the terms and conditions of his employment were affected.

B.   <u>Retaliatory discharge</u>.

"To establish a prima facie case of retaliation, [Plaintiff] must establish that:  (1) he engaged in protected opposition to discrimination; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action." *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1252 (10th Cir. 2001).  "It is well settled that the burden of persuading the factfinder that the defendant intentionally discriminated remains at all times with the plaintiff.  A showing of retaliatory

motive has long been relevant to the causation prong of a retaliation claim, . . . [and] the plaintiff must prove that the defendant's action was intentionally retaliatory.  *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1263 (10th Cir. 1998).

According to Plaintiff, on January 12, 2001, his co-workers came to work drunk and started punching Plaintiff and put a trash can over his head.  He states that the next day he was threatened by his co-workers who told him to go home or he would get hurt.  At this point, Plaintiff left the premises, went to the Gallup Police Department and made out a complaint and returned to work with a police officer.  When he returned he was fired by Mr. Zollinger.  According to Defendant, Plaintiff was told to go home on January 12th because he struck Ronald Livingston.  Mr. Zollinger states that he had seen a videotape of this incident and that is why he fired Plaintiff.

Disregarding for now the conflicting factual accounts leading up to Plaintiff's termination, the court focuses on the first element of the prima facie case: whether Plaintiff was engaging in protected activity in opposition to discrimination.  Defendant asserts, without citation to authority, that filing a police report is not protected activity.  The court disagrees.  *See Worth v. Tyer*, 276 F.3d 249, 264 (7th Cir. 2001).  In that case, the plaintiff filed a police report stating that the defendant had touched her breast while she was at work.  The court held that "[w]e have no problem concluding that Worth's police report constitutes protected activity under Title VII's 'opposition' clause."  *Id.*

The problem in this case, however, is that Plaintiff's police report contains no mention of discriminatory activity.  *See* Defendant's Exhibit P.  The report states that Plaintiff alleged that the day before (January 12) his co-workers had started fights with him

6

and called him lazy ever since he got hurt because he was unable to lift anything.  He states that Ronald Livingston hit him.  *Id.*  The police officer states in the report that he then accompanied Plaintiff to the newspaper premises to speak to the two co-workers about the alleged battery, they were met by Zollinger who told Plaintiff he was a "lazy ass" and had started two fights at work.  Zollinger fired Plaintiff on the spot and refused to let the officer interview the employees.  *Id.*

Considering all of the record in this case, the court finds that Plaintiff cannot meet the first element of his prima facie case.  Clearly there was discord at work and clearly tempers were high on both sides.  Nevertheless, all of the inferences to be drawn indicate that Plaintiff was disliked because his co-workers thought he was lazy and somewhat arrogant, not because of his race or his national origin.  As such, he cannot prevail on his retaliation claim.

C.    <u>Intentional Infliction of Emotional Distress</u>

To prevail on the tort of intentional infliction of emotional distress, the plaintiff must establish three elements:  "(1) the conduct in question was extreme and outrageous; (2) the conduct of the defendant was intentional or in reckless disregard of the plaintiff; (3) the plaintiff's mental stress was extreme and severe; and (4) there is a causal connection between the defendant's conduct and the claimant's mental distress."  *Trujillo v. Northern Rio Arriba Elec. Coop., Inc.*, 41 P.3d 333, 342 (N.M. 2001) (internal quotation marks and citation omitted).

The conduct giving rise to such a claim must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded

as atrocious, and utterly intolerable in a civilized community." *Id.* (internal quotation marks and citation omitted). The court makes the initial determination of whether the conduct at issue meets this requirement. *Id.*

Plaintiff contends that all of the conduct alleged in this action constitutes the intentional infliction of emotional distress: the name calling, the physical altercations, and the termination from his employment. The court finds that none of the conduct alleged constitutes grounds for imposition of this tort. No reasonable person could find that the actions complained of are intolerable in a civilized society. Therefore, this claim fails as a matter of law.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Defendant's Motion for Summary Judgment [Doc. 37] is granted and this case will be dismissed with prejudice.;

IT IS FURTHER ORDERED that the following pending Motions are denied as moot: Docket Nos. 36, 39, and 40.

IT IS SO ORDERED.

                                                  Richard L. Puglisi
                                      United States Magistrate Judge
                                          (sitting by designation)

For the Plaintiff:    James Lyle, Esq.

For the Defendant:    Eleanor K. Bratton, Esq.